### 538.  GRIFFIN *v.* THE STATE.

1. While the guilt of a defendant, charged with crime, may be inferred from circumstances satisfactorily proved which are inconsistent with innocence, the circumstances relied upon must be affirmatively established and legally proved.
2. Evidence that the defendant was present at a game of cards, and ran, upon the approach of officers armed with pistols, is not (in the absence of evidence that such defendant either played or bet for money, or had in his hands or near him either cards or money) sufficient to establish the guilt of such defendant beyond a reasonable doubt within the meaning of the Penal Code, § 984. Neither presence nor flight, nor both together, without more, is conclusive of guilt.
3. The belief of a witness can not supply the place of substantive material facts.

Indictment for gaming, from Ben Hill superior court—Judge Whipple.  May 20, 1907.

Argued July 17,—Decided October 3, 1907.

*E. W. Ryman,* for plaintiff in error.  *Walter F. George, solicitor-general, E. D. Graham, A. J. McDonald,* contra.

RUSSELL, J.  The defendant was accused of gaming.  The evidence showed that he was in company with others, some of whom were undoubtedly engaged in playing and betting at cards for money.  Upon the approach of the chief of police of Fitzgerald and an assistant, who presented a pistol and called to the negroes "to hold up," the defendant incontinently fled, and the chief of police tore the defendant's shirt in the struggle to retain the prisoner.  The defendant was convicted.  A fact can be proved by circumstantial evidence as well as by direct proof.  Gaming is one of those offenses which ordinarily must be proved by circumstantial evidence, if at all; and so well is the taste of some of our

African citizens for petty gambling known, that a nocturnal gathering in a secluded spot, where the tableau is presented of several negroes seated or squatted around a quilt on which are cards and money, raises a violent suspicion of guilt against any one of the number who may be in proximity to the quilt, the cards, or the money. But the law does not authorize conviction upon suspicion, no matter how violent, nor relax the rule laid in the Penal Code, §984, for the mere reason that gambling is detestable, that gamblers should be punished, and that proof of guilt is hard to obtain. The same rule applies to gaming as to all other offenses. "To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." Circumstances which authorize a mere conjecture of guilt are not sufficient to warrant a conviction, and the evidence, when entirely circumstantial, should connect the defendant with the criminal act. The only facts positively proved in this case were, that the defendant was present where gambling was going on, and that he ran when accosted to the accompaniment of a pistol. True, one of the witnesses for the State testified that "all of them *seemed* to be engaged in a game of cards. The cards had been dealt around, and all of the men *looked like* had cards, either in his hands or in front of him on the quilt, and most, if not all, had money in front of them." But upon cross-examination the same witness testified, as did the only other witness for the State, in effect, "I can not swear positively that the defendant had cards in his hands or money in front of him, or that he was actually playing and betting in the game. The witness's entire knowledge with reference to the defendant's connection with the game, if he had any, is summed up in the statement following, that "he was with the others in a circle around the quilt." The gratuitous statement that he *appeared* to be engaged in the game was only an expression of opinion on the part of the witness, prejudicial to the defendant, and not proper evidence to be considered by the jury. As pointed out in *Mimbs* v. *State, 2 Ga. App.* 387, 58 S. E. 499, the word, "seem" may be opinionative or positive, according to the context.

Admitting that gambling was going on in the hallway, and that the defendant was present, it seems to us that the defendant should

have been connected with the gambling in some way; that the State should have proved, not that others had cards, but that this defendant handled some card in the game; not that others had money, but that this defendant had some interest, present or prospective, in some portion, at least, of the money seen by the officers. While the main witness for the State testified that they all *seemed* to be engaged in the game, he positively declined to swear that "the defendant had cards in his hand or money in front of him." If the witness did not pretend to know these facts, how could the jury know it? And if the jury did not know at least this much, how could they infer participation and guilty presence?

Nor do we think the circumstance of flight, under the facts disclosed in the record, adds any very great weight to the evidence of guilt. Proof of flight is, at best, only equivocal evidence and subject to explanation. We think this defendant's flight, whether he were guilty or innocent, is easily explained when we consider the fact that the gathering (whether this defendant was one of the illegal participants or not) was suddenly surprised by an unexpected visitor who had noiselessly reached the top of the stairway, shouted for attention, and presented to their astonished eyes a gleaming revolver. Had the defendant been ever so innocent, it would have been hard for him to resist the contagious impulse, which overwhelmed those who were guilty, to fly because they fled. In *Harmon* v. *State,* 120 *Ga.* 197, it was held that "evidence that the defendant and three others were lying on the ground in a secluded spot with money before them, that each had cards in his hands, and that upon being discovered all attempted to escape, was sufficient to sustain a verdict that the defendant was playing and betting at a game played with cards for money." And it has been decided by this court in *Hicks* v. *State,* 1 *Ga. App.* 722, following the decision in *Pacetti* v. *State,* 82 *Ga.* 297, that inculpatory facts will authorize convictions of gaming. But in all cases the facts must be connected with the defendant. If this defendant had been shown to have been in possession of cards, as was shown in the *Harmon* case, or the keeper of the room embellished with gaming devices and accessories, as shown in the *Pacetti* and *Hicks* cases, the verdict of guilty would have been authorized. But mere presence or flight to avoid arrest, or both together, is not inconsistent with innocence.            *Judgment reversed.*