37996. HENDRICKS *v.* THE STATE.

TOWNSEND, Judge. 1. Code § 34-9924 provides: "Any manager of a primary election, who shall be guilty of fraud or corruption in the management of an election shall be punished as for a misdemeanor." The accusation in the instant case alleges that the defendant, being manager of a primary election held on September 10, 1958, for the 255th Militia District, Jackson County, Georgia, and after having been sworn to make a just and true return, did wilfully, knowingly, falsely and fraudently miscount votes and did certify that J. E. Collins, opposing candidate to the defendant for the office of member of the County Democratic Executive Committee, receive only 604 votes in the election, the defendant well knowing that Collins had received more than 604 votes and as many as 791 votes for the office.

(a) "One of the duties of a superintendent of an election, after the votes are all counted out, is to state, in a certificate signed by him, the number of votes received by each person voted for. . . This means, of course, that the certificate must correctly give the number of votes received by each person voted for. If the number of such votes is knowingly and falsely misstated by a superintendent of an election, he has failed to discharge a duty imposed upon him by law." *Black* v. *State,* 36 *Ga. App.* 286 (1a) (136 S. E. 334). An election manager who knowingly and wilfully certifies false returns after being sworn to conduct the election honestly and in accordance with law is guilty of false swearing. *Norton* v. *State,* 5 *Ga. App.* 586 (63 S. E. 662). That this is a fraudulent and corrupt practice there can be no argument. It follows that the accusation was not subject to demurrer as set out in grounds 1, 2 and 4 contending that it fails to set forth any crime, is too vague, indefinite and uncertain to put the defendant on notice of the crime with which he is charged, and fails to allege that any person or corporation has sustained any loss as a result of the alleged fraud.

(*b*) Ground 3 of the demurrer attacks the allegation "being then and there a manager of a primary election" as a conclusion, and ground 5 attacks the allegation that the defendant did "certify that the said J. E. Collins received only 604 votes" without setting out how, in what manner, and to whom the certificate was made. Similar questions were raised by demurrer to the indictment in *Norton* v. *State*, 5 *Ga. App.* 586, supra, and it was there held that "if the primary election in question is described in the indictment with such reasonable certainty as to inform the defendants and the court as to what particular transaction is to be investigated, the description is legally adequate, although additional or different words of description might also have been used with propriety." The allegation that the defendant was a manager of a primary election, taken in connection with Code § 34-3201 setting forth the position of election manager and the manner in which he shall be selected, is an allegation of fact and not a conclusion. The duty of the election managers in a primary election to make a return is set forth in Code § 34-3207. The indictment was accordingly not subject to demurrer on the ground that the defendant was not sufficiently apprised of the manner in which the crime was alleged to have been committed, and no further information was essential to the authenticity of the accusation. The trial court properly overruled the demurrers.

2. On the trial it was shown that the defendant did not himself count the ballots, but that they were counted by various helpers who submitted to the defendant tallies representing their subtotals; that the defendant then himself prepared the certificate of election returns, which involved consolidating the subtotals into total votes cast for each candidate, and that he then signed it and presented it to two other persons who did not in fact check the figures prepared by him but who also signed at his request. This certificate showed the defendant was receiving 765 votes when in fact he received 567 votes, and showed his opponent as receiving 604 votes when in fact he received 791 votes. If the defendant falsely and fraudulently certified these facts knowing them to be untrue he is guilty, regardless of whether he himself counted the original ballots or not. The State undertook to show this fact by the testimony of six witnesses who counted votes after the polls were closed. The first witness testified that in the defendant's race she counted 144 ballots and supplied correct

totals of 43 votes for Hendrix, 95 votes for Collins and 6 void, on an unmarked card, to the defendant, who took this card with others and from them obtained the consolidated figures. The second witness testified that she followed the same procedure, was not sure how many votes she counted, but counted and double checked them and gave the defendant the totals on her card; that what she said at the time was correct. The third witness testified to the same effect. The fourth witness testified that she counted about 100 ballots and counted them over to be sure they were correct; that there were eight ladies counting. The fifth witness testified that at the conclusion of the count she turned her card over to the defendant and the total on it was correct; that the defendant took up all the cards. The sixth witness also testified that she counted and double checked the ballots assigned to her and turned the total over to the defendant. This was sufficient to show, as to all witnesses who had counted votes for and against the defendant in the election, that correct totals were turned over to the defendant and that he prepared and certified to a false return. However, the State's evidence also shows that not all persons who counted ballots testified in the proceeding. A witness for the State testified that eight ladies counted votes; the defendant stated the number as nine ladies and two men. Only six counters testified and there was no evidence that these were all the persons who counted votes and submitted subtotals to the defendant. The State having based its case on the proposition that the defendant, being furnished with correct information as to the votes cast, certified a false return, and it appearing that the defendant did not himself count ballots but obtained the information as to what was on the ballots from others, it became incumbent for the State, in order to convict, to affirmatively show that the defendant knowingly and fraudulently prepared a false certificate. To do this it was necessary for the State to show that none of the information given the defendant on the cards turned in to him was incorrect. At least two persons who counted ballots on that night were not present and there was no testimony that their count as turned over to the defendant was correct. All of the facts, including testimony as to the defendant's manner of conducting the election, and his interest in the return, are sufficient to create a strong suspicion of his guilt. But "the law does not authorize conviction upon suspicion, no matter

how violent." *Griffin* v. *State,* 2 *Ga. App.* 534, 535 (58 S. E. 781). There was direct and conclusive evidence that the return was certified by the defendant and that it was false. There was direct evidence that the defendant alone prepared the return, from information given him by others, and that some of the information so given him was correct. As to the remaining information given him there is no testimony one way or the other; thus, there was no direct evidence that all the information the defendant received was correct. If it be argued that this could be inferred from all the circumstances in the case, yet it still would not exclude the reasonable hypothesis that one or another of the persons counting who did not testify had made an error in the tally sufficient to account for the discrepancy. Even if it could be contended that the discrepancy is too great to be so accounted for, at the very least it must be said that, under such circumstances, the verdict would rest entirely upon circumstantial evidence, in which event the trial court erred, as contended in the special grounds of the motion for new trial, in not charging the law relating to circumstantial evidence. *Boyd* v. *State,* 201 *Ga.* 853 (41 S. E. 2d 309). On another trial of this case it should be shown that all of the information upon which the defendant based his certificate was correct, and this can be shown by the testimony of those who supplied it, whether or not they remember at this time the exact figures upon their respective tallies.

3. The word "fraud" being in common usage and easily understood by laymen and members of the jury, it was not error, in the absence of request, to define its meaning.

The trial court erred in denying the motion for new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*

DECIDED NOVEMBER 18, 1959.

*Frank B. Stow, Robert E. Andrews,* for plaintiff in error.
*Nat Hancock, Solicitor, James Horace Wood,* contra.